UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

MAY 30  12 11 PM '03

CLERK
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA,      )
                                )
        Plaintiff,              )
                                )  Civil No.
        v.                      )
                                )
JAMES HARVEY, JR. and           )  2:03-cv-159
LAURA HARVEY,                   )
                                )
        Defendants.             )

**COMPLAINT FOR FORECLOSURE BY POWER OF SALE**

**NOTICE TO DEFENDANTS:** IN ORDER TO RECEIVE NOTICE OF THE FORECLOSURE JUDGMENT, YOU ARE REQUIRED BY LAW TO ENTER AN APPEARANCE IN THIS ACTION EITHER THROUGH AN ATTORNEY OR ON YOUR OWN BEHALF AFTER SERVICE HAS BEEN MADE UPON YOU BY THE UNITED STATES OF AMERICA AND YOU HAVE RETURNED YOUR WAIVER OF SERVICE OF SUMMONS TO THE OFFICE OF THE UNITED STATES ATTORNEY. IF SUCH APPEARANCE IS NOT FILED WITH THE CLERK OF THE UNITED STATES DISTRICT COURT WITHIN SIXTY (60) DAYS OF SERVICE OF THIS COMPLAINT, YOU WILL NOT RECEIVE NOTICE OF THE FORECLOSURE JUDGMENT WHICH WILL SET FORTH THE AMOUNT OF MONEY YOU MUST DEPOSIT TO REDEEM THE PROPERTY AND THE AMOUNT OF TIME ALLOWED YOU TO REDEEM THE PROPERTY.

**NOTICE TO ALL TENANTS AND OCCUPANTS OF REAL PROPERTY AS REQUIRED BY 12 V.S.A. 4523(c)(2):**

**THE PROPERTY IN WHICH YOU LIVE IS BEING FORECLOSED UPON. YOU ARE NAMED AS A DEFENDANT IN THE FORECLOSURE BECAUSE YOUR RIGHT TO REMAIN ON THE PREMISES MAY END WHEN THE FORECLOSURE IS COMPLETED. YOU MUST NOTIFY THE COURT OF YOUR NAME AND ADDRESS IN ORDER TO BE KEPT INFORMED OF THE STATUS OF THE FORECLOSURE.**

**YOU ARE ALSO ADVISED, PURSUANT TO 12 V.S.A. § 4523 (c)(3), THAT, IN THE EVENT THE OWNER IS UNABLE TO REDEEM THE PREMISES, YOU MAY BE REQUIRED TO VACATE THE PREMISES UPON 30 DAYS NOTICE.**

1.

The United States of America, by its attorney, Peter W. Hall, United States Attorney for the District of Vermont, brings this Complaint and states as follows:

### Introduction, Jurisdiction and Parties

1. This is a civil action to foreclose by power of sale a mortgage given by James Harvey, Jr. and Laura Harvey ("the borrowers"), to the plaintiff, United States of America ("the United States"), on or about August 1, 1989.

2. This Court has jurisdiction in this matter under 28 U.S.C. § 1345 and 42 U.S.C. § 1490a.

3. On information and belief the last known addresses of the defendants are as follows:

   James Harvey, Jr.
   PO Box 83
   Richmond, VT 05477

   Laura Harvey
   PO Box 83
   Richmond, VT 05477

### Foreclosure By Power of Sale

4. On or about August 1, 1989, James Harvey, Jr. and Laura Harvey duly executed to the United States of America, a real estate mortgage covering certain land and premises described therein. Paragraph 24 of the mortgage reserves to the United States the right to foreclose the mortgage as authorized by state and/or federal laws, including but not limited to foreclosure by power of sale. A copy of the mortgage is attached to and made a part of this complaint as Exhibit A.

5. The mortgage was duly recorded on August 2, 1989, in

2

the Richmond Land Records in Book 67, Pages 209-213.

6. The mortgage was conditioned upon the payment of a certain promissory note dated August 1, 1989, in the principal sum of $85,000.00 bearing interest at the rate of 9% per annum. A copy of the note is attached to and made a part of this complaint as Exhibit B.

7. The note was modified by virtue of a Reamortization and/or Deferral Agreement dated August 1, 1999. A copy of the Reamortization and/or Deferral Agreement is attached to and made a part of this complaint as Exhibit C.

8. An interest credit agreement was in effect from September 1, 1995 to March 31, 2002. Pursuant to 42 U.S.C. § 1490a and the terms of the mortgage and the subsidy repayment agreement, any interest credit assistance received on any mortgages given on or after October 1, 1979 is subject to recapture upon the disposition of the property.

9. The note provides that upon default by the borrowers of any payment, the United States at its option may declare all or any part of any such indebtedness immediately due and payable. Because the borrowers have defaulted on the note, acceleration and demand for full payment took place on January 11, 2002.

10. Though demand has been made, the borrowers have refused, neglected or have been unable to pay the amounts due pursuant to the terms of the note. There is due and owing by the borrowers to the United States of America as of February 18, 2003, the principal sum of $78,844.03 plus interest in the

amount of $10,400.93, which interest accrues at the daily rate of $20.2369. There is further due and owing interest credit subsidy subject to recapture and principal reduction attributed to subsidy in the amount of $23,861.62, as described in paragraph 8 above and fees assessed at $4,075.21.

11.  On information and belief, in order that it may protect and preserve its security, the United States may be compelled to make advancements for payment of taxes, hazard insurance, water and sewer charges, or other municipal assessments. Although the nature and amount of such expenses are unknown to the United States at this time, the United States seeks recovery of those expenses, together with interest thereon.

12.  No other action has been brought to enforce the provisions of the aforesaid promissory note and real estate mortgage, and all conditions precedent to the bringing of the action have been performed or have occurred.

13.  The United States has complied with the requirements of all applicable servicing regulations.

WHEREFORE, THE PLAINTIFF PRAYS:

   a.   That the defendants' equity of redemption be foreclosed in accordance with law;

   b.   That the Court enter pursuant to the United States' exercise of its rights to a foreclosure by public sale, an order for public sale of the mortgaged premises;

   c.   That the Court award expenses incurred by plaintiff to preserve and protect its security;

    d.    That the Court fix and allow attorney's fees and other costs and expenses incident to this proceeding;

    e.    That the United States of America be granted a writ of possession in the mortgaged premises;

    f.    And for such other and further relief as this Honorable Court may deem just and equitable.

Dated at Burlington, in the District of Vermont, this 30th day of May, 2003.

                                UNITED STATES OF AMERICA

                                PETER W. HALL
                                United States Attorney

By: *[signature]*
                                MELISSA A. D. RANALDO
                                Assistant U.S. Attorney
                                P.O. Box 570
                                Burlington, VT   05402
                                (802)951-6725

*Town Clerk* [signature]

Position 5

USDA-FmHA
Form FmHA 427-1 VT
(Rev. 7-88)

AUG. 8 1989

# REAL ESTATE MORTGAGE FOR NEW HAMPSHIRE, VERMONT AND VIRGIN ISLANDS

THIS MORTGAGE is made and entered into by __James A. Harvey, Jr. & Laura L. Harvey__

residing in __Chittenden__ County, or Judicial Division, State or Territory of __Vermont__, whose post office address is __PO Box 83, Richmond, VT 05477__, in said State, herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," and:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 8/1/89 | $85,000.00 | 9.00 % | Aug. 1, 2022 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased after 3 years, as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance endorsement by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, convey, mortgage, assign and forever warrant unto the Government the following property situated in the County of __Chittenden__, State of ~~New Hampshire or~~ Vermont, or Judicial Division _____ Territory of the Virgin Islands.



GOVERNMENT EXHIBIT A

FmHA 427-1 VT (Rev. 7-88)

Being all and the same lands and premises conveyed to James A. Harvey, Jr. and Laura L. Harvey by Warranty Deed of Robert W. Coleman and Shirley K. Coleman dated August 1, 1989 and recorded in Volume __67__ at Page _207-208_ of the Land Records of the Town of Richmond.

Being all and the same lands and premises conveyed to Robert W. Coleman and Shirley K. Coleman by Warranty Deed of Bernard W. Cross and Lillian A. Cross dated September 3, 1981 and recorded in Volume 40 at Page 368 of the Land Records of the Town of Richmond.

A lot of land on the easterly side of U.S. Route #2 designated as Lot #2 consisting of 1.357 acres as shown on a Plat of Survey for Bernard Cross dated March 1977 prepared by John A. Marsh.

Said lot is more particularly described as follows: Beginning at a point marking the northwesterly corner of the herein conveyed lot which point also marks the northeasterly corner of Lot #1 as shown on the above described Plat; thence proceeding N 77 degrees 30' E a distance of 200 feet, more or less, to a point marking the northeasterly corner of the herein conveyed lot; thence deflecting to the right and proceeding in a generally southerly direction along the boundary line separating Lot #2 and Lot #3 referenced on the above described Plat to a point marking the southeasterly corner of the herein conveyed lot; thence deflecting to the right and proceeding on a bearing of N 65 degrees 27' 30" W a distance of 150 feet, more or less, to a point marking the southwesterly corner of the herein conveyed lot; thence deflecting to the right and proceeding along the boundary line separating Lot #1 and Lot #2 to the point of beginning.

Said parcel is subject to an 30 foot right of way crossing the most northerly portion of the subject parcel said right of way more particularly described in the above mentioned Warranty Deed of Cross to Coleman dated September 3, 1981 and recorded in Volume 40 at Page 368 of the Land Records of the Town of Richmond.

Reference is hereby made to the instruments aforementioned, and the records thereof, and the instruments therein referred to, and the records thereof, in further aid of this description.

See attached description.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government–whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefits of any such State or Territorial laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex or national origin.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) This instrument sh[all] be subject to the present regulations of the F[arme]rs Home Administration, and to its future regulations not inconsistent wit[h] the express provisions hereof.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at P. O. Box 588, Montpelier, Vermont 05602, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms as may be required by statute or as may be determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(25) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

PROVIDED that if all the indebtedness hereby secured is duly paid and each and every covenant, condition, agreement, and obligation, contingent or otherwise, contained herein, secured hereby or arising hereunder is fully performed and discharged, this mortgage shall be void,; otherwise to remain in full force and effect.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ___1___ day of ___August___, 19_89_.

Signed, sealed, and delivered in the presence of:

_____ (Witness)        _James A. Harvey, Jr._ (SEAL)

_____ (Witness)        _Laura L. Harvey_ (SEAL)

**ACKNOWLEDGMENT**

STATE OR TERRITORY OF ___Vermont___

COUNTY OR JUDICIAL DIVISION OF ___Chittenden___

On this ___1___ day of ___August___, 19_89_, before me, the undersigned, a Notary Public in and for said State or Territory and County or Judicial Division, personally appeared

James A. Harvey, Jr. & Laura L. Harvey,

individually known to me and by me known to be the parties executing the foregoing instrument, and to me acknowledged the said instrument to be executed by them as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal on the date above written.

My commission expires ___2/10/91___

David M. Sunshine, Esq.   *Notary Public.*

(NOTARIAL SEAL)

☆U.S. Government Printing Office: 1988-501-475

USDA-FmHA
Form FmHA 1940-16
(Rev. 8/87)

## PROMISSORY NOTE

| TYPE OF LOAN | |
|---|---|
| Section 502 - RH | |

| STATE | VERMONT |
|---|---|
| COUNTY | CHITTENDEN |
| CASE NO. | 53-04-8547266 |

Date __AUGUST 1,__ , 19_89_.

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in __ESSEX JUNCTION, VT   05453__,

THE PRINCIPAL SUM OF __EIGHTY-FIVE THOUSAND AND NO/100__

DOLLARS ($ __85,000.00__ ), plus INTEREST on the UNPAID PRINCIPAL of __NINE__ PERCENT ( __9__ %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I.   Principal and Interest payments shall be deferred. The interest accrued to _____, 19____ shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.   Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____ of each _____ beginning on _____, 19____, through _____, 19____, Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☒ III.   Payments shall not be deferred. Principal and Interest shall be paid in __396__ installments as indicated in the box below:

$ __674.00__ on __SEPTEMBER 1ST,__ , 19_89_, and $ __674.00__ thereafter on the __1ST__ of each __MONTH__ until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and PAYABLE __THIRTY-THREE__ ( __33__ ) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

**GOVERNMENT EXHIBIT B**

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are hereby waived.

**A REAMORTIZATION AGREEMENT DATED** 8/01/99
**IN THE PRINCIPAL SUM OF $** 83,237.39
**HAS BEEN GIVEN TO MODIFY THE PAYMENT SCHEDULE OF THIS NOTE.**

_____ (SEAL)
JAMES A. HARVEY, JR. (BORROWER)

_____ (SEAL)
LAURA L. HARVEY (SPOUSE)

P.O. Box 83

Richmond, VT   05477

### RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 85,000.00 | 8-1-89 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 85,000.00 | |

☆ U.S. Government Printing Office: 1987—723-431/61518

Position 2

FmHA 1940-16 (Rev. 8/87)

# REAMORTIZATION AGREEMENT

Account Number                                    Effective Date
   6469563                                          August 1, 1999

The United States of America, acting through the Rural Housing Service, United States Department of Agriculture (Lender), is the owner and holder of a promissory note or assumption agreement (Note) in the principal sum of $    85000.00, plus interest on the unpaid principal of    9.00000% per year, executed by JAMES A HARVEY                        and LAURA L HARVEY                       , (Borrower) dated    August 1, 1989 and payable to the order of the Lender. The current outstanding balance includes unpaid principal, accrued unpaid interest, unpaid advances and fees. The total outstanding balance is $    83237.39.

In consideration of the reamortization of the note or assumption agreement and the promises contained in this agreement, the outstanding balance is capitalized and is now principal to be repaid at  9.00000% per annum at $     715.24 per month beginning September 01, 1999 and on the  1st day of each succeeding month until the principal and interest are paid, except that the final installment of the entire debt, if not paid sooner, will be due and payable on
    August 01, 2022.

Subject to applicable law or to a written waiver by Lender, Borrower shall pay to lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for : (a) yearly taxes and assessments which may attain priority over Lender's mortgage or deed of trust (Security Instrument) as a lien on the secured property described in the Security Agreement (Property); (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan, may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law or federal regulation that applies to the funds sets a lesser amount. If so, Lender may, at any time, collect and hold funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held by a federal agency, including Lender, or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits the Lender to make such charge. However, Lender may require



borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the funds.

Lender shall give to borrower, without charge, an annual accounting of the funds, showing credits and debits to the funds and the purpose for which each debit to the Funds was made. The funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Unless changed by this agreement, all of the terms of the note or assumption agreement or the instruments that secure them, remain unchanged.

Upon default in the payment of any one of the above installments or failure to comply with any of the conditions and agreements contained in the above-described note or assumption agreement or the instruments securing it, the Lender, at its option may declare the entire debt immediately due and payable and may take any other action authorized to remedy the default.

_[signature]_ Date 8-16-99
Borrower

_[signature]_ Date 8-16-99
Borrower